Good morning, Your Honors. Bradford Child for the appellant 1617 Westcliff LLC. And we're appealing today the ruling of the trial court that found that we had failed to allege a breach of a pre-negotiation agreement that was a precursor or supposed to be a precursor to discussions regarding modification of appellant's loan liabilities under a commercial mortgage held by the appellant. And I think a brief summary version of our argument is contained in the record in our objections to the trial court's proposed ruling in the record at pages 2 through 5. But essentially the trial court ruled that his reading of the First Amendment complaint was that there was no breach of contract alleged within the First Amendment complaint. And the reason for that was what? Because there was no contract? No. His ruling was he believed that we didn't allege in the First Amendment complaint that the appellees had not engaged in discussions regarding modification of the loan. And if you look at the oral argument, I specifically referred the court to paragraph 32 of the First Amendment complaint where we clearly alleged that they had not engaged in any discussions after our client agreed to the terms of the pre-negotiation agreement. That may not have been the reason that the district court gave, but I have the same question as Judge Tachima in wondering whether the P&A is even an enforceable contract. When the terms are so indefinite, you do plead in the First Amendment complaint as part of your, I think, the fraud or unjust enrichment rescission claims that the benefits to Westcliff were illusory. So given the fact that we have the P&A and we can look at how indefinite these terms are with the allegations of illusory benefits to Westcliff, how is that an enforceable contract? Well, I think we've pleaded in the alternative because the one promise that's contained within the pre-negotiation agreement is that the appellees will engage in discussions regarding modification of the loan. Sure, but any party can discontinue negotiations at any time and negotiations aren't even required. They may engage in negotiations. No, they agree. Neither party is created, neither party is obligated. That's repeated over and over again in the P&A. I think you might possibly have a better fraudulent inducement or fraud type claims, but I wonder, I question whether you have a contract claim. Well, they specifically promise and they state in the pre-negotiation agreement that lender is agreeable to participate in discussions requested by Westcliff. We requested discussions. Agreeable to that? What does that mean? Well, I think the clear, if it's not expressed, it's certainly implied that they're going to participate in discussions about modification of the loan. It's an odd way to say it. I mean, it would seem to me they agree to participate, I would understand, but it's agreeable to participating. It's an odd way to write a contract. They write these agreements. I think if there's any vaguery there, it has to be interpreted against the appellees. Judge Wendland said there's no obligation to do anything except maybe we are agreeable to talking, but that either party could withdraw at any time. Right. And the breach of contract is the allegation that they never, in fact, talked. They didn't engage in any discussions regarding the appellant's loan obligations whatsoever. And that's where we see the breach of contract. Right. Well, before breach, there has to be an enforceable contract before we get to breach. But let me move you on to the fraudulent inducement and all of the other fraud-based claims. If we believe that the district court was correct that the First Amendment complaint failed to allege the particularity that's required by Rule 9b, are there additional allegations that you could assert if given leave to amend? Well, I think the biggest complaint that was made about the fraud allegations was not identifying the loan servicer representatives by name as to who had made the representations that pre-negotiation agreement would result in these negotiations. I think that's the primary complaint. And as we cited in our papers, a fraud allegation like that is not insufficient where the knowledge of those individuals is exclusively within the defendant's knowledge. The defendant certainly knew and does know today who participated in these negotiations regarding the pre-negotiation agreement. So it's something that would be drawn out in discovery if we were able to conduct discovery and find out exactly who the individuals were that were represented. To me, it goes beyond just the question of identifying the appropriate individuals because, as you indicated, some of this might be undoubtedly may be uncovered in discovery. But it's really the plaintiff's obligation to plead facts, giving rise to an inference of fraudulent intent to not comply when those representations were made. And that's where I see the complaint falling short. It's a bit vague as to what happened between the time, for example, that the P&A was negotiated and the time that litigation was initiated and then the receiver was appointed and where some of these actions, as defendants argued, may be initiated by the receiver. Pardon me. I still have questions reading through the fraud-based claims as to exactly what happened. And so it's difficult to discern where the fraudulent intent could have come from. Well, I think the fraud is in the representation that the appellees are going to participate in discussions regarding the loans and the loan documents and the obligations that appellant had under the loan. And we expect, and given the opportunity to amend, would have alleged that we expect discovery to show that the reason why that promise was false and the reason why no such discussions ever occurred was that defendants had concealed from plaintiff that the mortgage was actually packaged in a commercial mortgage-backed security and that the servicers actually had no authority to engage in any sort of modification discussions without getting approvals from the actual participants in the commercial mortgage-backed security. So we expect to find that there was never any intent whatsoever to actually engage in any meaningful discussions regarding... No, I understand that that's what you're going to be arguing, but I'm not sure I heard the answer to my question. Are there additional factual allegations that you would be able to plead? Are these facts you expect to uncover through discovery or are they factual allegations that would go into an amended complaint if given the opportunity to amend? Well, I think both. I think it's something that would go into an amended complaint to show additional pled facts as to why the promises that were made were never intended to be carried out. And I think discovery will show that there was never any intent. My clients have alleged in the First Amendment complaint that there never were any discussions. So we know there weren't any discussions. The question is why were there never any discussions? That information is, to some extent, exclusively within the possession of the defendants. And we suspect, we believe, we think discovery will show that they never actually had authority from participants in the mortgage-backed securities to engage in any such discussions. And that's going to be what we expect to reveal in discovery, and it's also something that we could set forth in an amended pleading if allowed to do so. As we alleged in the First Amendment complaint, our client had many obligations that it fulfilled that were a part of the pre-negotiation agreement. And, for example, our client incurred liability for attorney's fees on behalf of appellees for the negotiation and execution of the pre-negotiation agreement. Our client promised and allowed environmental assessments to be made of their property. And our client also released liability for, in particular, insurance claims that were owed to them from an insurance claim that had been recovered by the appellees. So we did suffer detriment as a result of the pre-negotiation agreement. And we have substantial damages as a result of the breach of that agreement. And whether... I'm sorry. Tell me again. What do you claim was the breach not discussing? The breach was not even discussing. Not even discussing. So if we conclude that the District Court did that the agreement does not require the defendants to discuss, then you have no case, right? Well, then what we have... Do you agree with that? Do you agree with that premise? Isn't that what the District Court found? No. Concluded? I think the District Court concluded that we had an alleged breach. Well, District Court said, let me see, something like, on the breach of contract, what did he say? Who was this? Judge Selma said, the P&A does not obligate Wells Fargo to discuss Westcliff's dispute. There's no obligation to discuss. It says, you know, we'll talk to you, but we don't have to. As Judge Reinhart, you know, read from the agreement. Yeah, but that's not what the agreement says. The agreement specifically says the lender agrees to discuss your liabilities under the loan documents with you. That's the purpose of the pre-negotiation agreement, is that if you sign this agreement, they're willing to discuss these modification terms with you. They don't make any clear promises in the agreement that you're going to get a modification, but they agree that they're going to discuss it with you. Our case is they didn't discuss it with us. They never intended to discuss it with us. The question is, is there fraud aside from the fact that they didn't discuss it? Yeah, because they never intended to discuss it with us, because actually they – we expect discovery to show, and certainly in an amended complaint, if we had been allowed to amend, we could have pled that they intended to discuss it. Well, are you somehow alleging they never had any intention to do anything about this deal at all? I don't think they had authority. What we didn't know at the time but learned later was that our loan had been sold into some tranche of a commercial mortgage-backed security that had multiple participants that actually controlled everything to do with how our loan was serviced. And the people we were dealing with actually had no authority to modify our loan or to engage in discussions about modification of our loan. That's what we're getting at. That's what we're expecting to prove, and I think that's the reason underneath why we never had any discussions. And they instead went immediately forward with appointing a receiver. Then the appellant went into bankruptcy, lost the property, and this sad sequence of events is detailed in the First Amendment complaint. Thank you, Kent. Thank you. Thank you. Good morning. Bill Barron for the lending parties. The problem with Westcliffe's argument is that the loan contracts and the P&A defeat all of their claims. The P&A, as the Court noted, said that the lending parties were agreeable to discuss issues having to do with curing the default on the loan. The P&A did not state that the lending parties would agree to discuss the two points that Westcliffe had said it wanted to discuss regarding use of a reserve account or distribution of late rental payments. And in the other provision that counsel cited on page 4 of the P&A at 73 of the record, paragraph 8, the P&A said that the lender may conduct negotiations. So nowhere does the P&A obligate the lender to negotiate the specific points that Westcliffe argues or any other points. The district court was correct that there was no breach of contract. And Westcliffe didn't plead that it tried to discuss curing the default. All the P&A talked about is how is Westcliffe going to cure the default that Westcliffe had decided to create on its own. In your view, did the P&A obligate Wells Fargo to do anything? The P&A, the deal in the P&A was that Wells Fargo would discuss curing the default. So it's a binding obligation to enter into discussions? No, it's essentially an agreement. Well, then what's the answer to my question? In your view, did the P&A obligate Wells Fargo to do anything under the contract? No, it permitted Wells Fargo. That could result in a breach if they didn't do it. No, it permitted Wells Fargo to engage in negotiations regarding curing the default. So they had no obligation under the contract. That's right. So it was an illusory contract, wasn't it? It wasn't illusory. If it can't be enforced and there's no enforceable benefit going to the other side, isn't it illusory? No, the benefit was that Westcliffe would have an opportunity to cure the default, which they did not do. Well, they have that opportunity anyway. They did. That's right. And that's the point. Well, so they're not getting anything out of the agreement. That's right. But they also have no obligations under the agreement. So you're saying neither side had an obligation under the agreement? Not that they didn't already have. Right. So it's an illusory agreement, isn't it? It's giving Westcliffe notice that if Westcliffe wants to talk about curing the default, then all of the obligations in the loan document still apply, and all of the remedies of the lenders in the loan document still apply. Which is true whether you sign that agreement P&A or not anyway, right? That's right. But the point of it is to prevent this lawsuit. The point of it is that the lenders will agree to talk about curing the default, but in exchange for that they are advising Westcliffe that Westcliffe can't think that the lenders have implied that they would cure the default, that Westcliffe couldn't think that the lenders had agreed to negotiate any changes in the loan documents. And it also advised, contrary to what Westcliffe has just argued, the P&A advised Westcliffe that this loan was handled by servicers. It advised Westcliffe that the agents of the servicers and the officers that Westcliffe was dealing with had no authority to agree to the changes and that the lender didn't agree to make any changes. And as far as the damages that Westcliffe claims, the loan documents already provided for all the relief described in the P&A. The problem with all of Westcliffe's claims, including their breach of contract claim and their fraud claim, is that the loan documents defeat any claim for damages. And that's a reason that leave to amend the fraud claim shouldn't be granted, aside from the fact that Westcliffe hasn't pled any fraudulent statements by any particular people. What do you understand the fraud claim to be? What is the plaintiff alleging? The plaintiff, as I understand it, alleges that the lenders promised they would agree to discuss specific points having to do with use of tenant funds and late tenant payments. And the amended complaint alleges that the lenders refused to discuss those two points. And there's an allegation that the lenders intended to draw Westcliffe in and that Westcliffe would undertake additional obligations under the P&A that didn't already exist in the loan documents. So the fraud is, what, as you say, drawing Westcliffe in? That's what they're arguing, that somehow the lenders were drawing Westcliffe in and undertaking, Westcliffe was undertaking additional obligations it didn't already have in exchange for this agreement to discuss those two points. Well, first of all, the P&A did not. And then if they were drawn in, what's the harm from the fraud, assuming there was fraud? Well, there wasn't fraud, and there can't be any harm, because each of the remedies that was described in the P&A, Westcliffe had already agreed to under the loan documents. For example, counsel argued that P&A agreed to waive a claim for $10,000 in insurance funds under the P&A. But, in fact, Section C-4 of the deed of trust that was part of the original loan documents provided that the lender had the right to those insurance funds, and that's in the record at 128. Westcliffe, when it defaulted, lost any claim to those insurance proceeds. That's provided by Paragraph 4 of the deed of trust, and that's in the record at 131 to 132. Westcliffe also argued that the P&A required it to pay the servicer's attorney's fees, but, in fact, Section 31 of the deed of trust required Westcliffe to pay any and all expenses incurred by the lender. In dealing with Westcliffe, that's at page 147 of the record, and at page 139, Paragraph 13 of the deed of trust, to find the lender to include the servicers. So the deed of trust already required Westcliffe to pay the attorney's fees it's now arguing about. In addition, the promissory note in Section 9 required Westcliffe to reimburse all of lender's attorney's fees incurred in dealing with this transaction. And how do we get to looking at all of these documents? I'm assuming these were documents attached in connection with the motion to dismiss. Yes, they were. So we'd have to take judicial notice to go beyond the allegations of the complaint? Right, and that's why Westcliffe did not include the contracts with the complaint or the amended complaint, because the loan contracts and the P&A defeat their claims, and the district court did take judicial notice of these contract terms. Let me ask you about the unjust enrichment rescission claims that are based on the allegation that this is the P&A was an illusory contract. Why don't those claims go back if we think that the P&A was not an enforceable contract because the benefit to Westcliffe was illusory? Because all of the remedies that Westcliffe argues only existed under the P&A, they all existed under the promissory note and deed of trust. There was no unjust enrichment in the P&A. Everything here that Westcliffe is complaining about resulted from its intentional default under the loan documents. And so there's no enrichment that wasn't already provided for. And in addition, there's another reason that Westcliffe can't state a claim for damages. Counsel argued that Westcliffe lost the property. In fact – So part of the allegations that the P&A, as I understand it, and when counsel comes up he can correct me if I'm wrong, that basically the bank, Wells Fargo, induced them to enter into the P&A that gave Westcliffe very little benefit but gave Wells Fargo benefits such as giving up on the insurance fund, the $10,000 fund, basically allowing for environmental assessment, immediate appraisal, inspection of the building. And so Wells Fargo took advantage of all of those provisions and confirmed that there was a lot of equity and then pushed them into litigation receivership. Right? You're saying that all of that Wells Fargo could have done anyway. That's right. Upon default. All of these consequences flow from default. The provision for environmental assessments is in Section 24 of the deed of trust in the record at page 145. It permitted lender to enter and inspect the property at all reasonable times. And then upon default, Section 20A.7 of the deed of trust provided that in the event of default, lender had the right to enter the property, conduct any repairs, maintenance, or any other operations that lender considered necessary. The appointment of the receiver was provided for upon default as a matter of right, and that is in the record at 143 in paragraph 20A.6 of the deed of trust. So each of these remedies that Westcliff is claiming unjustly enriched the lenders, in fact, were the consequences of Westcliff's decision to default on the loan. And the P&A didn't add any rights for the lenders other than were already in the loan documents. The other reason that Westcliff can't amend its complaint to state a claim for damages, is counsel argued that Westcliff lost the property. In fact, after Westcliff, after the lenders had sought to foreclose, Westcliff filed for bankruptcy protection. And in the bankruptcy proceeding, Westcliff sold the property, and Westcliff controlled the sale subject to the bankruptcy court's approval. And Westcliff admitted that it sold the property for more than the appraised price. And that is in Westcliff's petition filed in the bankruptcy court to approve the sale at 326 lines 14 through 16. So Westcliff itself sold the property for more than the property had been appraised for. And then out of those proceeds, Wells Fargo recovered part of the amounts it was owed. The lenders recovered part of the amounts they were owed, but no more. All of the recovery that the lenders obtained was provided for in the loan documents. So if there had been any inducement, which there wasn't, and if there had been a breach of contract, which there wasn't, Westcliff couldn't amend its complaint to state a claim for damages of any kind. What about the fraud and the negligence claims? Well, the negligence claim fails because a lender does not have a duty to negotiate changes in a loan contract. What Westcliff is complaining about is that the lenders declined to agree to change two terms having to do with use of money that had already been paid. The cases cited in the brief say that the lenders had no obligation to make those changes. And Westcliff's argument is, well, there's a duty of good care under the law from the contracts because this was a, they called it a complicated arrangement that involved servicers. But there's no allegation that the servicers did anything that made Westcliff declare its default. Westcliff said it was receiving enough money from the property to pay the loan obligations, but it decided to declare a default as a way to try to force the lender to renegotiate the loan terms. And there's no negligence pled, there's no breach of any tort duty by any of the lender parties. As far as the fraud claims, the fraud claims, as the Court pointed out, were not pled with any specificity at all. With a corporation, the plaintiff has to identify the people who made the supposed claims and has to identify which party made which claim. But here there's none of that, as the Court pointed out. And this was the second chance that Westcliff had to plead its complaint. And it failed to allege any detail supporting fraud. But again, as I pointed out, if leave to amend were granted, Westcliff couldn't claim any damages resulting from the P&A transaction. Thank you, Kent. Thank you. We'll give you, yeah. Thank you. I know my time went by. Thank you. It's astonishing to me that the lender is now asserting that their pre-negotiation agreement actually is not a binding agreement, that there's no obligations that they have whatsoever. I just don't think the Court can read what they're telling borrowers at the bottom of page 190 of the record about how the borrowers are desirous of engaging in discussions regarding modification with the lender and that the lender is agreeable to participate in such discussions regarding the obligations under the loan agreement. I mean, as a borrower, as a, I mean, here we're dealing with a retired doctor who's the principal of this company. He's certainly interpreting this agreement as a promise to participate in discussions that never happen. And there was detriment. Counsel went through the rights that the lenders had in a default very quickly, but you didn't hear him say that they had a right to conduct appraisals. You didn't hear him say that they had a right to conduct environmental assessments of the property. These things occurred. He said they had a right to enter. They had a right to repair. The purpose of the pre-negotiation agreement, the reason the lender's putting these obligations in is so that they have a definite contractual right to conduct appraisals, to conduct environmental assessments, and to settle the borrower with the costs incurred for attorney's fees for the negotiation and execution of the pre-negotiation agreement. None of those obligations exist without the pre-negotiation agreement. Thank you. Thank you, counsel. The case just argued will be...
judges: Reinhardt, Tashima, Nguyen